UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FIRST BAPTIST FERRY PASS INC,
     Plaintiff,

vs.                                  Case No.: 3:21cv544/MCR/ZCB

WESTERN WORLD INSURANCE
COMPANY,
     Defendant.

_____/

## REPORT AND RECOMMENDATION

The Court dismissed this property insurance action on August 2, 2022, after the parties reached a settlement.  (Doc. 31).  Things have since gone awry, and Defendant has refused to pay the settlement amount.  That refusal prompted Plaintiff to file a "Motion to Enforce Settlement Agreement and For Entry of Judgment for Plaintiff."  (Doc. 32).  Defendant responded in opposition to Plaintiff's motion.  (Doc. 39).  Defendant also filed a motion of its own—a "Motion for Sanctions" (Doc. 37), to which Plaintiff has responded in opposition (Doc. 42).  The Court held an evidentiary hearing on the motions.  For the reasons below, the settlement agreement should be enforced and sanctions should not be imposed.

## I.    Background

This case began on February 24, 2021, when Plaintiff filed a complaint claiming Defendant breached its insurance contract by failing to pay for hurricane

1

damage to Plaintiff's building. (Doc. 1-1). The case was filed in state court and later removed. (Doc. 1). On July 19, 2022, the parties attended a private mediation that resulted in a settlement agreement. (Doc. 29). Upon notice of the settlement, the Court issued an order of dismissal. (Doc. 31). The order of dismissal stated that if "the settlement is not consummated, the Court reserves the power to reopen the case for further proceedings on motion filed by any party within sixty (60) days of this Order and a showing of good cause." (*Id*.).

The settlement was not consummated after a dispute arose regarding whether the settlement included an Assignment of Benefits (AOB) that Plaintiff had previously executed with an architecture firm, KDH Architecture. The dispute has prompted Plaintiff to ask the Court for an order enforcing the settlement agreement. Based on its belief that a discovery violation by Plaintiff regarding the KDH Architecture AOB tainted the settlement process, Defendant has moved for sanctions against Plaintiff.

The Court held an evidentiary hearing on February 27, 2023. (Doc. 49). Prior to that hearing, the parties stipulated to certain facts. (Doc. 48). At the hearing, the parties jointly moved sixteen exhibits (Exhibits A-P) into evidence. Fifteen of those exhibits had been previously filed as attachments to the stipulation of facts. (Doc. 48-1 to 48-15). Additionally, the Court heard testimony from Plaintiff's representative, Paul Blackmon, Sr., and Defendant's representative, Christa Camp.

Plaintiff's counsel and Defendant's counsel also provided testimony at the evidentiary hearing.

## II.    Findings of Fact

Based on the testimony at the evidentiary hearing, the documentary evidence provided by the parties, and the information in the record, the Court makes the following findings of fact:

1. Prior to commencing this lawsuit, Plaintiff had retained United Damage Adjusters, a public adjusting firm.

2. United Damage Adjusters prepared an estimate of the damage caused to Plaintiff's building.  The estimate included a line item in the amount of $28,920.78 for "Architectural/Drafting fees" as a "Bid Item."

3. Kenneth Hecht is an architect who is licensed by the State of Florida.  He is the President of KDH Architecture.

4. Mr. Hecht was retained by Plaintiff's counsel to serve as an expert witness regarding the scope of damage to Plaintiff's building and the necessity of any repairs.

5. On May 13, 2021, Plaintiff filed its Rule 26 initial disclosures.

6. On November 10, 2021, Mr. Hecht/KDH Architecture executed an Assignment of Benefits (AOB) with Plaintiff.

7. Under the terms of the AOB, Plaintiff assigned "all insurance rights, benefits, proceeds and any causes of action under *any* applicable insurance policies to **KDH ARCHITECTURE, INC.** (hereinafter referred to as "Company"), for **Architect Services**."

8. On March 18, 2022, Plaintiff amended its Rule 26 disclosures.  Plaintiff did not reference KDH Architecture or Mr. Hecht in its amended disclosures.

9. On May 26, 2022, Plaintiff again amended its Rule 26 disclosures.  Plaintiff did not reference KDH Architecture or Mr. Hecht in its amended disclosures.

10. Plaintiff did not identify KDH Architecture or Mr. Hecht in any of its responses to Defendant's interrogatories.

11. Plaintiff's expert disclosures identified Mr. Hecht as an expert, and Plaintiff provided Defendant with an expert report prepared by Mr. Hecht.

12. Mr. Hecht's expert report indicated that he was serving in a dual role as "an expert for the Insured," as well as "the Architect of Record for the Insured." The expert report further delineated the different fee structure for Mr. Hecht's role as "expert for the Insured" and his role as "the Architect of Record for the Insured."

13. On May 27, 2022, Mr. Hecht emailed Christa Camp, Defendant's claims adjuster, attaching "Invoice #1."  "Invoice #1" lists "**KDH Architecture, Inc.**" in a heading and "Assignment of Benefits – Architecture" in a heading.

"Invoice #1" reflected a $40,050.00 "Grand Total to Date" and a $72,550.00 "Total of Completed and Projected Work."[1]

14. On May 31, 2022, Ms. Camp responded to Mr. Hecht, inquiring as to who hired him and requesting a W9 form from him.

15. On June 3, 2022, Mr. Hecht responded with a W9 and stated, "My AOB contract with the Insured was sent previously."

16. On June 6, 2022, Ms. Camp responded with "Please forward AOB, this claim is in suit."

17. On June 15, 2022, Mr. Hecht emailed Ms. Camp, attaching the requested AOB. The AOB lists "**<u>KDH Architecture, Inc.</u>**" in a heading and states "**Assignment of Insurance Benefits**" on the first page.

18. After receiving the AOB, Ms. Camp provided it to Defendant's counsel.

19. On June 28, 2022, Defendant's counsel emailed Plaintiff's counsel regarding the AOB. The email stated: "Can you reach out to your expert? He seems

---

[1] Based on Exhibit C to Plaintiff's motion (Doc. 32 at 59), it appears that Mr. Hecht first emailed the AOB to Defendant on November 11, 2021. It appears that email was sent to Defendant's "desk adjuster" Alesia Cork by Mr. Hecht. Neither Mr. Hecht nor Ms. Cork testified at the evidentiary hearing. The testimony of Defendant's representative, Christa Camp, established that Plaintiff's claim was initially handled by Ms. Cork. Ms. Cork then left Defendant's employ, and the claim was re-assigned to Ms. Camp. Ms. Camp testified that she did not recall seeing the November 11, 2021, email from Mr. Hecht to Ms. Cork regarding the AOB in the claim file when she took it over from Ms. Cork.

confused.  He's emailing my client asking to be paid saying he is an AOB vendor."

20. Plaintiff's counsel did not respond to the email from Defendant's counsel.

21. Defendant's counsel did not follow up with Plaintiff's counsel regarding the KDH Architecture AOB prior to the mediation on July 19, 2022.

22. The parties reached a settlement agreement during the July 19, 2022, mediation.

23. At the conclusion of the mediation, the mediator emailed Plaintiff's counsel and Defendant's counsel an "Acknowledgment of Settlement."  The Acknowledgment of Settlement was two pages long and contained thirteen numbered paragraphs.

24. The Acknowledgment of Settlement stated the following in paragraph six: "This settlement does not reduce, release, or resolve any pending **Assignment of Benefits** (AOB) claims or lawsuits arising out of the subject claim."

25. Also on July 19, 2022, the mediator emailed a summary of the settlement terms.  In that email, the mediator specifically stated that the settlement was "inclusive of indemnity, attorney's fees/costs, interest, bad faith, etc, but exclusive of the AOB."

26. Neither Defendant's counsel nor Plaintiff's counsel objected to the Acknowledgment of Settlement provided by the mediator.

27. Neither Defendant's counsel nor Plaintiff's counsel objected to the mediator's summary of the settlement terms.

28. The Acknowledgment of Settlement was signed by representatives of both Plaintiff and Defendant.

29. The Acknowledgment of Settlement was signed by Plaintiff's counsel and Defendant's counsel.

30. The representative who signed the Acknowledgment of Settlement for Defendant was Ms. Camp—the same individual who had previously received the KDH Architecture AOB via email from Mr. Hecht.

31. On August 2, 2022, the Court dismissed this matter upon notification that the parties had reached a settlement.

32. On August 4, 2022, Defendant's counsel drafted a release that required Plaintiff to release Defendant from all claims relating to damage caused by Hurricane Sally.

33. Defendant's counsel provided the draft release to Plaintiff's counsel.

34. Plaintiff's counsel responded by adding language to the draft release clarifying that the release was exclusive of any pending AOB.

35. Defendant's counsel objected to Plaintiff's counsel including the AOB exclusion language in the release.

36. Plaintiff's counsel responded by pointing out that the Acknowledgment of Settlement stated that the settlement was exclusive of any pending AOB.

37. Defendant has not paid KDH Architecture under the AOB.

38. KDH Architecture has filed a separate lawsuit against Defendant seeking payment under the AOB.

39. Defendant has not paid Plaintiff the amount set forth in the Acknowledgement of Settlement.

## III.    Discussion

The question before the Court is whether the settlement agreement (i.e., the Acknowledgement of Settlement) signed by the parties and their attorneys following the July 19, 2022, mediation should be enforced.  Courts "will enforce a settlement agreement as long as there is objective evidence to enable the court to discover the essential terms of the settlement . . . . [and] a clear understanding of the agreement on the record."  *Berman v. Kafka*, 518 F. App'x 783, 785 (11th Cir. 2013) (cleaned up).  State contract law governs the formation, construction, and enforceability of a settlement agreement.  *Broadnax v. Sand Lake Cancer Ctr., P.A.*, 819 F. App'x 799, 801 (11th Cir. 2020).  "In both Florida and federal courts, settlements are highly favored and will be enforced whenever possible."  *Id.* (internal quotations omitted).  "[W]here the language of a settlement agreement is clear and unambiguous, courts may not indulge in construction or modification, and the express terms of the

settlement agreement control." *Hernandez v. Gil*, 958 So. 2d 390, 391 (Fla. 3d DCA 2007).  It is not the Court's role to rewrite an agreement, "especially when both parties had ample opportunity to review the document before signing it." *Century Commc'ns. of Florida, Inc. v. Bright House Networks*, LLC, No. 09-81108, 2010 WL 11597662, at *2-3 (S.D. Fla. Sept. 29, 2010).  "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Broadnax*, 819 F. App'x at 801 (citing *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002)).

Here, Plaintiff filed the settlement agreement under seal.  (Doc. 38).  The agreement is short, simple, and written in plain English.  It contains neither fine print nor difficult-to-decipher legalese.  And it states in bold and underlined language that the "settlement does <u>not</u> reduce, release, or resolve any pending **Assignment of Benefits** (AOB) claims or lawsuits arising out of the subject claim."  (*Id.* at 2) (emphasis in original).  Further, the mediator's email summarizing the settlement agreement clearly stated that the settlement was "*exclusive* of *the* AOB."  (*Id.* at 9) (emphasis added).

Upon receiving and reviewing the settlement agreement provided by the mediator, Defendant did not raise any issue with the proposed terms and conditions.  Nor did Defendant inform the mediator of any concerns regarding his email summary of the parties' agreement.  Instead, Defendant (via its representative, Ms.

Camp) and Defendant's counsel signed the agreement and sent it back to the mediator. Plaintiff's representative and Plaintiff's counsel also signed the agreement and sent it back to the mediator. The document they all signed stated, in no uncertain terms, that the agreement reached by the parties excluded any pending AOB.

The only AOB that existed at that time for the subject building was the AOB belonging to KDH Architecture. By virtue of the settlement agreement's clear terms, KDH Architecture's AOB was excluded from the parties' settlement. *See Bivins v. Guardianship of Bivins*, 223 So. 3d 1006, 1008 (Fla. 4th DCA 2017) (stating that "[w]here the contractual language is clear, courts may not indulge in construction or modification and the express terms of the settlement agreement control"). To say otherwise would be to rewrite an agreement that Defendant (a sophisticated litigant) and Defendant's counsel (an experienced attorney) signed after having ample opportunity for review. That is something the Court cannot do. *See Pack v. Wiechert*, 285 So. 3d 1031, 1033 (Fla. 1st DCA 2019) (stating that "Florida courts will not rewrite the terms of a . . . settlement agreement or any other contract in which the terms are clear and unambiguous"). As the Eleventh Circuit has explained, "[i]t is well settled that a court cannot rewrite the terms of a contract in an attempt to make otherwise valid contract terms more reasonable for a party or to fix an apparent improvident bargain." *Leverso v. Southtrust Bank of Al.*, 18 F.3d 1527, 1534 (11th Cir. 1994).

10

In an attempt to avoid enforcement of the settlement agreement's clear terms, Defendant has made three arguments. First, Defendant claims the settlement agreement should not be enforced because Plaintiff violated Federal Rule of Civil Procedure 26(e)(1)(A) by failing to disclose the KDH Architecture AOB in discovery. Second, Defendant argues that the settlement agreement should be rescinded because of a unilateral mistake. Third, Defendant claims the settlement agreement is ambiguous regarding the exclusion of KDH Architecture's AOB. Each of the arguments will be considered in turn, but none of them are persuasive.

### A. Plaintiff did not violate Federal Rule of Civil Procedure 26(e)(1)(A).

There is no dispute that Plaintiff failed to disclose the KDH Architecture AOB to Defendant via a formal discovery response. Plaintiff did not disclose the AOB in its initial disclosures because the AOB was not in existence at that time. Defendant claims, however, that Plaintiff should have provided the AOB as a supplemental disclosure under Rule 26(e)(1)(A). And as Defendant sees things, Plaintiff's failure to disclose the AOB in a supplemental disclosure renders the settlement agreement unenforceable. (Doc. 39 at 9-10). Resolution of this issue requires an examination of Federal Rule of Civil Procedure 26(e)(1)(A).

Rule 26(e)(1)(A) states in relevant part that: "A party who has made a disclosure . . . must supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e)(1)(A). But a party is only required to supplement its initial disclosures "if

the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id*. The duty to supplement under Rule 26(e)(1)(A) "does not require an application of form over substance." *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998). Courts should "apply the disclosure rules with an eye toward common sense, keeping in mind the purposes that the rules are intended to accomplish." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617 (D. Nev. 2020). The primary purpose of the discovery rules is to ensure the parties are "on notice" of certain information possessed by the opposing party, so as to "eliminate surprise and trial by ambush." *Id*.; *see also Navarro v. Applebee's Intern., Inc.*, No. 7:10-CV-6, 2010 WL 3745905, at *1 (M.D. Ga. Sept. 20, 2010) (recognizing that the "purpose of civil discovery . . . is to remove surprise from trial preparation and allow the parties to acquire evidence necessary to evaluate and resolve their dispute").

The critical question in determining whether there has been a violation of Rule 26(e)(1)(A) is "whether the opposing party had meaningful notice to prepare its case." *V5 Techs.*, 334 F.R.D. at 617-18. The "incidental discovery" of information "ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently as a formal filing." *Coleman*, 997 F. Supp. at 1107 (discussing a scenario where a party learned of information during the deposition of another witness). Thus, a party need not supplement its disclosures when the other party has learned of the

information either during a deposition or in some written form. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004) (finding no duty to supplement discovery under Rule 26(e)(1) because the plaintiff "knew of [the witness] and the fact she possessed information relevant to this case through" the depositions of other people); *see also Cowley v. Sunset Yacht Charters, Inc.*, No. 10-61928-CIV, 2011 WL 13394793, at *1 (S.D. Fla. July 22, 2011) (finding no violation for failing to supplement discovery when the names of new witnesses were provided to the opposing party through email exchanges and other communications); *Cincinnati Ins. Co. v. Quorum Mgm't Corp.*, No. 5:12-cv-406, 2014 WL 585426, at *3 (M.D. Fla. Feb. 14, 2014) (holding there was no violation of Rule 26(e)(1) because the information was made "known to Defendants both during the discovery process and on a previous occasion in writing").

Here, Plaintiff did not disclose the AOB with KDH Architecture in its initial discovery disclosures because the AOB did not exist at that time. When Plaintiff later executed the AOB with KDH Architecture, it did not provide the AOB in a formal supplemental disclosure. It is undisputed, however, that Defendant (via its claims adjuster, Christa Camp) received the KDH Architecture AOB by email on June 15, 2022.[2]   It is further undisputed that Ms. Camp provided the KDH

---

[2] As previously mentioned, from the information submitted in support of Plaintiff's motion it appears Defendant likely received the KDH Architecture AOB months earlier when it was emailed by Mr. Hecht to Defendant's claims adjuster at the time,

Architecture AOB to Defendant's counsel.   So, Defendant and its counsel had received the AOB in writing approximately one month before the mediation that led to the settlement agreement.   Defendant, therefore, was aware of the AOB and had sufficient time to review it before signing an agreement that said "[t]his settlement does <u>not</u> reduce, release, or resolve any pending **Assignment of Benefits** (AOB) claims."   (emphasis in original).

Because the KDH Architecture AOB had "otherwise been made known" to Defendant "in writing," Plaintiff did not violate Rule 26(e)(1)(A) by failing to provide the AOB in a formal supplemental disclosure.   At the end of the day, the purposes of discovery were satisfied by Defendant's receipt in writing of the KDH Architecture AOB prior to the mediation. This is not the type of "ambush" situation that Rule 26(e)(1)(A) was intended to address.   Indeed, a contrary result would elevate form over substance.   *See generally* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (stating that "that there is no need as a matter of form to submit a supplemental disclosure to include information already revealed" to the party).

---

Alecia Cork.   Because neither Mr. Hecht nor Ms. Cork testified at the hearing, however, the Court is relying on June 15, 2022 (the date of Mr. Hecht's email to Ms. Camp) as the date on which Defendant received the KDH Architecture AOB. Regardless of the date of initial receipt, the point remains—Defendant and its counsel had the KDH Architecture AOB well in advance of the mediation.

None of the cases cited by Defendant compel a different result. Take for example, *Affiliati Network, Inc. v. Wanamaker*, 847 F. App'x 583 (11th Cir. 2021). In that case, a party improperly failed to disclose information that was not otherwise obtained by the other party prior to reaching a settlement. The *Affiliati* court stated that a settlement agreement may be set aside "when a party fails to turn over information in discovery that the opposing party c[ould not] otherwise obtain." *Id.* at 588. Here, unlike *Affiliati* where the information was not otherwise obtained by the opposing party prior to the settlement, Defendant and its counsel had the KDH Architecture AOB before the mediation and resulting settlement agreement.

Similarly distinguishable is *Garvin v. Tidwell*, 126 So. 3d 1224 (Fla. 1st DCA 2012). There, the plaintiff received important materials for the first time after it entered a settlement agreement. *Id*. at 1228. Based on the defendant's discovery violation, the *Garvin* court rescinded the settlement agreement. *Id*. at 1230. But in the current case, Defendant (unlike the plaintiff in *Garvin*) received the KDH Architecture AOB prior to entering into the settlement agreement. Thus, *Garvin* does not speak to the current situation. Because Defendant and its counsel received a written copy of the KDH Architecture AOB prior to the mediation, the settlement

agreement should not be set aside based on Plaintiff's failure to provide the AOB in a formal discovery supplement.[3]

## B. The unilateral mistake doctrine does not provide a basis for setting aside the settlement agreement.

Defendant also claims that the settlement agreement should be set aside based on the doctrine of unilateral mistake. More specifically, Defendant claims that when it signed the settlement agreement it was mistaken regarding Plaintiff's AOB with KDH Architecture. (Doc. 39 at 11). That argument lacks merit.

Under Florida law, a "settlement agreement can be rescinded for unilateral mistake if, among other things, the mistake did not result from an inexcusable lack of due care." *Berman v. Kafka*, 518 F. App'x 783, 785 (11th Cir. 2013) (cleaned up); *see also BP Prods N. Am. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128,

---

[3] Defendant has requested sanctions against Plaintiff under Rule 37(c)(1) for Plaintiff's failure to provide the AOB in a formal discovery supplement under Rule 26(e)(1)(A). (*See* Doc. 37). Because the KDH Architecture AOB was provided in writing to Defendant as explained above, Plaintiff did not violate Rule 26(e)(1)(A) by failing to provide the AOB in a formal discovery supplement. Absent a violation of Rule 26(e), there is no basis for sanctioning Plaintiff under Rule 37(c)(1). *See Bankston v. Kansas City S. Railway Co.*, No. 03-477-A-M2, 2005 WL 8155221, at *4 (M.D. La. Oct. 17, 2005) (denying motion for sanctions because although the information was not provided in a formal discovery supplement, it was otherwise provided to the opposing party which "effectively satisfied [the party's] duty to supplement under Rule 26(e)"); *see also Spralling v. Avaya, Inc.*, No. 1:04-CV-3349, 2007 WL 9700604, at *3 (N.D. Ga. Feb. 9, 2007) (finding sanctions unwarranted under Rule 37 because the information had been otherwise disclosed during discovery and, therefore, no violation of Rule 26(e)'s duty to supplement occurred).

1139 (M.D. Fla. 2007) ("In Florida, a mistake resulting from an inexcusable lack of due care cannot be used to set aside a contract on the basis of unilateral mistake."). A lack of due care is inexcusable when a party's claimed mistake resulted from an attorney's failure to "advise its client on the meaning of every term in the settlement agreement" or to "delete or otherwise modify an essential term." *Contraband Sports, LLC v. Fit Four, LLC*, No. 17-24615, 2018 WL 6620902, at *5 (S.D. Fla. Oct. 11, 2018) (internal citations omitted).

What happened in *Contraband Sports* is similar to what happened here. The plaintiff sought to avoid enforcement of a settlement agreement based on the doctrine of unilateral mistake because he misunderstood how the term "[t]erritory" was used in the agreement. *Id*. at *3. In rejecting that argument, the *Contraband Sports* court explained that any mistake resulted from an inexcusable lack of due care because the plaintiff's attorneys reviewed the agreement with him before it was finalized. *Id*. at *5. According to the court: "[T]he settlement agreement was only thirteen pages long where the provision at issue was not hidden and Plaintiff's attorneys had more than enough time to review all of the language and to clarify any questions about the terms presented." *Id*. The attorneys and the plaintiff "should have read the agreement, discussed any questions about the terms presented, and raised those issues *before* explicitly agreeing to the language in the settlement agreement." *Id*. (emphasis in original).

Another similar case is *Century Communications of Florida, Inc. v. Bright House Networks*, LLC, No. 09-81108, 2010 WL 11597662 (S.D. Fla. Sept. 29, 2010).  In that case, the defendant's failure to perform under a settlement agreement prompted a motion to enforce.  The main point of contention between the parties was the scope of a release contemplated by the settlement agreement.  *Id*. at *1.  Although the agreement stated the parties were to exchange general releases, the defendant argued that the language regarding general releases was inadvertently included in the agreement.  *Id*. at *1-2.  Rejecting that argument, the *Century Communications* court found that a party's "failure to delete or otherwise modify an essential term . . . constitutes inexcusable lack of due care."  *Id*. at *3.  The court further explained that the release language "was not hidden in the contract," and if the defendant's attorney "did not intend to commit her client to the exchange of general mutual releases . . . then [the attorney] should have read the document and raised the issue before signing."  *Id*.; *see also Mellini v. Paulucci*, 310 So. 3d 123, 127 (Fla. 5th DCA 2020) (finding inexcusable lack of due care where the "terms of the promissory note were not complicated," and "there was no excuse for the attorneys not to review the terms of the documents" before proceeding further in the case).

Here, as in *Contraband Sports* and *Century Communications*, the claimed mistake was the product of an inexcusable lack of due care.  The settlement

agreement was a short and simple document written in plain English.  And the AOB exclusion provision contained underlined and bold-faced type to ensure it was not overlooked.  The AOB exclusion provision was also summarized in the mediator's email.  Defendant and its counsel had ample time to review the settlement agreement and seek any necessary clarifications before affixing their signatures.  If Defendant and its counsel were confused or uncertain regarding the status of the KDH Architecture AOB or the scope of the language excluding any pending AOBs from the settlement agreement, then that confusion should have been addressed before they signed the settlement agreement.[4]  The failure to do so was an inexcusable lack of due care and, therefore, the unilateral mistake doctrine should not bar enforcement of the parties' settlement agreement.

**C. The settlement agreement's AOB exclusion language is not ambiguous.**

Finally, Defendant argues that there was no meeting of the minds because the settlement agreement's language excluding AOBs from the agreement is ambiguous. (Doc. 39 at 12-14).  The Court disagrees.

---

[4] Before the mediation, Defendant's counsel had reached out to Plaintiff's counsel via email with questions about the KDH Architecture AOB.  Plaintiff's counsel (who was apparently out of the country at the time) did not respond to the inquiry prior to the mediation.  Instead of renewing the previous questions or otherwise seeking clarification about Plaintiff's AOB with KDH Architecture, Defendant and its counsel signed a settlement agreement with language that clearly excluded AOBs from the settlement.

To be enforceable, a settlement agreement's "terms must be sufficiently specific and mutually agreed upon as to every essential element." *Spiegel*, 834 So. 2d at 297. "The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957).

When determining the interpretation of a settlement agreement, "[t]he parties' intent must be gathered from the instrument itself without reference to extrinsic evidence unless the settlement agreement is ambiguous." *Matter of Blue Crest Holding Asset, Inc.*, No. 17-21011-CIV, 2018 WL 2227739, at *10 (S.D. Fla. May 16, 2018). Thus, "[w]here the contractual language is clear and unambiguous, courts may not indulge in construction or modification and the express terms of the settlement agreement control." *O'Neill v. Scher*, 997 So. 2d 1205, 1207 (Fla. 3d DCA 2008) (cleaned up). A contractual "provision is ambiguous if it is fairly susceptible to different constructions." *Teague v. Teague*, 122 So. 3d 938, 942 (Fla. 4th DCA 2013) (cleaned up).

As previously mentioned, the provision of the agreement in question states as follows: "This settlement does <u>not</u> reduce, release, or resolve any pending **Assignment of Benefits** (AOB) claims or lawsuits arising out of the subject claim." Defendant argues the word "pending" is ambiguous because it is susceptible to two

possible meanings.  More specifically, Defendant argues it believed "pending" in the context of the AOBs meant only those AOBs that had been provided in formal discovery, while Plaintiff believed "pending" referred to any AOB that existed at the time.

Having reviewed the settlement agreement's language, the Court finds that the language is clear and unambiguous.  The word "pending" should, therefore, be given its plain and ordinary meaning—which is "remaining undecided; awaiting decision."  Black's Law Dictionary 1169 (8th ed. 2004); *see also Idearc Media Group v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008) (stating that "[w]here contractual provisions are clear and unambiguous, those terms must be given their plain and ordinary meaning").  Applying that plain and ordinary meaning here, the settlement agreement excluded from its coverage the KDH Architecture AOB—an AOB that at the time of the mediation "remain[ed] undecided."

To summarize, the settlement agreement in this case spoke clearly regarding the exclusion of AOBs.  Equally clear was the mediator's email summarizing the settlement agreement.  Defendant and its attorney read the agreement and signed it. And they did so with knowledge that the KDH Architecture AOB existed.  Although Defendant (faced with a claim by KDH Architecture to collect under the AOB) may now wish the settlement agreement had different terms, "a litigant cannot

permissibly attack a settlement simply because the relief [it] apparently wanted and the relief to which [it] agreed were not the same." *BP Prods. N. Am., Inc.*, 469 F. Supp. 2d at 1139.

**D. Plaintiff's request for attorney's fees should be denied.**

Plaintiff has requested reimbursement for its attorney's fees relating to enforcement of the settlement agreement. (Doc. 32 at 10). Plaintiff has provided no statutory support for this request. Nor does the settlement agreement contain a provision authorizing attorney's fees for litigation seeking the agreement's enforcement. Thus, Plaintiff's request for attorney's fees should be denied.

## IV.   Conclusion

For the reasons above, the undersigned respectfully **RECOMMENDS** as follows:

1.    Plaintiff's "Motion to Enforce Settlement Agreement and For Entry of Judgment for Plaintiff" (Doc. 32) be **GRANTED in part** to the extent that Defendant shall pay the amount due under the settlement agreement within **fourteen days** of the District Judge's decision regarding this recommendation and **DENIED in part** to the extent that Plaintiff has requested attorney's fees.

2.    Defendant's Motion for Sanctions (Doc. 37) be **DENIED**.

3.    The Clerk of Court be directed to close this case.

At Pensacola, Florida this 30th day of March 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**